**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-12-0000299**
**24-OCT-2014**
**09:07 AM**

NO. CAAP-12-0000299

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


AUSTIN ASHLEY, MARISSA ASHLEY and ACTION TEAM REALTY, INC.,
Plaintiffs-Appellees,
v.
TODD E. HART and HART OF KONA REALTY, INC.,
Defendants-Appellants
and
DEBRA A. HART, Defendant.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(S.P. NO. 06-1-10K)


SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

Defendants-Appellants Todd E. Hart and Hart of Kona Realty, Inc. (collectively Hart Appellants) appeal from the March 2, 2012 Final Judgment (Judgment) and February 28, 2012 "Findings of Fact; Conclusions of Law; Order Confirming Final Arbitration Award and Final Judgment" (FOF/COL) entered by the Circuit Court of the Third Circuit[1] (circuit court). The Judgment confirmed a June 5, 2006 Final Arbitration Award entered in favor of Plaintiffs-Appellees Austin Ashley, Marissa Ashley, and Action Team Realty, Inc. (collectively the Ashleys) and against the Hart Appellants. Judgment was entered pursuant to an order of remand from the Intermediate Court of Appeals (ICA) for

---

[1] The Honorable Greg K. Nakamura presided.

further consideration of two claims of prejudicial misconduct by an arbitrator.

The parties submitted a contractual dispute to arbitration before attorney Shawn M. Nakoa (Arbitrator). After the circuit court confirmed the Arbitration Award, the Hart Appellants appealed to the ICA in Case No. 28207. This court issued a Memorandum Opinion remanding two limited issues to the circuit court: (1) whether the Arbitrator's alleged ex parte consultation with attorney Kenneth Ross (Ross) constituted prejudicial misconduct under Hawaii Revised Statutes (HRS) § 658A-23(a)(2)(C) (Supp. 2013); and (2) whether the Arbitrator's ex parte telephone contacts with the Ashleys' counsel constituted prejudicial misconduct. Ashley v. Hart, No. 28207, at *11 (App. Feb. 25, 2011) (mem.).

On November 17, 2011 the circuit court held an Evidentiary Hearing to determine the outstanding issues, taking testimony from Stephen D. Whittaker (counsel for the Ashleys), Usha Kilpatrick Kotner (former counsel for the Hart Appellants), Ross, and the Arbitrator. The circuit court then issued its FOF/COL, and filed its Judgment confirming the Arbitration Award. On March 29, 2012, the Hart Appellants filed this appeal.

As their point of error on appeal, the Hart Appellants assert that "[t]he sole issue in this appeal is whether or not the Third Circuit Court erred and abused its discretion in holding that '[the Hart Appellants] have failed to meet their burden of proving that [the Arbitrator] committed misconduct prejudicing their rights in the arbitration proceeding.'" In support of their point of error, the Hart Appellants argue that the circuit court was clearly erroneous in making certain Findings of Fact (FOFs) and erred in its Conclusion of Law (COLs) related to whether the Arbitrator committed prejudicial

2

misconduct by consulting with Ross and failing to make appropriate disclosures.[2]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve the Hart Appellants' points of error as follows, and affirm.

The Hart Appellants challenge three of the circuit court's FOFs and one COL. They are:

> [FOF] 6. No specific agreement was reached among [the Arbitrator] and the parties as to whether or not [the Arbitrator] could confer with Mr. Ross about the case.

> [FOF] 7. It was [the Arbitrator's] belief that she disclosed to the parties at the first prehearing conference that she intended to confer with Mr. Ross or "her partners" about the case and that no one objected to her expressed intent.

> [FOF] 9. Mr. Ross did not have a conflict of interest with any of the named parties in the case.

> [COL] 2. On the record, [the Hart Appellants] have failed to meet their burden of proving that [the Arbitrator] committed misconduct prejudicing their rights in the arbitration proceeding. Accordingly, under the standard set forth in HRS §658A-23(a)(2)(C), the vacating of the Final Arbitration Award is improper.

## FOF 6

The Hart Appellants argue that the circuit court erred in entering FOF 6 because the Arbitrator's testimony "had nothing to do with the parties reaching any agreement[.]" The circuit court was not clearly erroneous because there is evidence in the record to support the finding.

"In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." Chun v. Bd. of Trs. of the

---

[2] Although the ICA also remanded the issue of whether the Arbitrator's ex parte communications with the Ashleys' counsel constituted prejudicial misconduct, the Hart Appellants do not challenge the circuit court's findings and conclusions as to that issue.

3

Employees' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (citations, internal quotation marks, and ellipses omitted) (block quote format altered) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)). "An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. [The Hawai'i Supreme Court has] defined 'substantial evidence' as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Leslie v. Estate of Tavares, 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999) (citations and internal quotation marks omitted) (block quote format altered) (quoting State v. Kotis, 91 Hawai'i 319, 328, 984 P.2d 78, 87 (1999)).

The Arbitrator testified that she advised the parties of her intention to consult with colleagues at the September 2005 prehearing conference, but could not remember whether she said "my partners" or "Ken Ross." Whittaker, counsel for the Ashleys, could not recall whether the name Ross was brought up at all. Kotner, on the other hand, affirmatively asserted that there was no mention of consultants or Ross at the prehearing conference.

Despite the conflicting testimony given at the Evidentiary Hearing, because the record shows that the parties failed to come to an agreement, FOF 6 is not clearly erroneous.

### FOF 7

The Hart Appellants argue that FOF 7 is clearly erroneous because both parties were unaware of Ross's involvement until after the Arbitrator entered the award. The circuit court was not clearly erroneous because the finding is based on the Arbitrator's belief of what she had disclosed at the prehearing conference rather than the parties' understanding of her disclosures.

FOF 7 relates to the parties' discussion at the prehearing conference about utilizing the Court Annexed Arbitration Program (CAAP) Rules, which allow an arbitrator to consult with colleagues. The Arbitrator testified as follows:

4

> What I recall from the first prehearing conference is that we talked about using the CAAP rules because they were more straight forward. And that they allowed me to confer with -- and I cannot remember whether I said my partners or Ken Ross. I simply cannot recall one way or the other. Um, I might have said my partners. I might have said Ken Ross. Ken Ross is the only other partner within the Kona office.

The Arbitrator testified that she felt she "had disclosed in that first prehearing conference that I had a practice of conferring with my partners" and "that was understood and no one objected to that."

Relying on her notes of the prehearing conference rather than her independent recollection, Kotner testified that she knew that the parties did not discuss "the Arbitrator consulting with anyone else." Whittaker recalled that the parties and Arbitrator "talked about the advantages of more formal versus less formal type proceedings and the experience that Counsel had with respect to the CAAP rules." In an earlier declaration, Whittaker stated that the parties "agreed to apply the CAAP rules, to allow the Arbitrator to consult her colleagues . . . ."

Because the circuit court heard the testimony and there is evidence to support FOF 7, it is not clearly erroneous.

### FOF 9

The Hart Appellants argue that FOF 9 is clearly erroneous because Ross's representation of another party in an unrelated case, in which Kotner was adverse counsel, created a conflict of interest that prejudiced the outcome of the arbitration. Although Ross did have a potential conflict with a party's counsel and failed to disclose it, to be discussed further *infra*, Ross never represented or provided any legal services to any of the parties in the arbitration. Thus, Ross did not have a conflict of interest with any of the named parties and FOF 9 is not clearly erroneous.

### COL 2

The Hart Appellants argue that the circuit court erred in concluding that they failed to meet their burden of proving

5

that the Arbitrator committed misconduct prejudicing their rights.[3]

A COL is not binding upon an appellate court and is freely reviewable for its correctness. Chun, 106 Hawaiʻi at 430, 106 P.3d at 353.

> [The appellate court] ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

Id. (citations, internal quotation marks, and brackets omitted) (quoting Ponce, 105 Hawaiʻi at 453, 99 P.3d at 104).

In this appeal, the Hart Appellants assert two grounds for their claim of prejudicial misconduct: the Arbitrator's failure to disclose her consultation with Ross; and the failure to disclose Ross's alleged conflict with Kotner, the Hart Appellants' counsel. Under HRS § 658A-23(a)(2)(C), a court shall vacate an arbitration award if there was "[m]isconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding."

Based on the record and findings by the circuit court, there is a question to what extent the parties were informed that the Arbitrator would consult with a colleague. Even if we assume the Arbitrator's consultation with Ross was ex parte, guidance from federal case law indicates that we must consider whether the Hart Appellants have demonstrated prejudice by the alleged misconduct.[4] See United States Life Ins. Co. v. Superior Natʻl

---

[3] The Hart Appellants also make some vague and passing references to evident partiality under HRS § 658A-23(a)(2)(A) (Supp. 2013). However, we previously resolved the Hart Appellants' claims related to evident partiality and that issue was not part of the remand to the circuit court.

[4] Similar to the Uniform Arbitration Act adopted by Hawaiʻi, Section 10(a)(3) of the Federal Arbitration Act provides for an arbitration award to be vacated because of, inter alia, "any other misbehavior by which the rights of any party have been prejudiced[.]" 9 U.S.C. § 10(a)(3) (2012). Reliance on relevant federal case law is therefore appropriate. See Daiichi Hawaiʻi Real Estate Corp. v. Lichter, 103 Hawaiʻi 325, 339, 82 P.3d 411, 425 (2003).

6

Ins. Co., 591 F.3d 1167, 1176 (9th Cir. 2010) (recognizing that "[e]x parte conduct by an arbitration panel requires vacatur of an award *only* if the ex parte contact constitutes misbehavior that prejudices the rights of a party"); Lefkovitz v. Wagner, 395 F.3d 773, 780 (7th Cir. 2005) (although the arbitrator's consultation with an accounting firm regarding key issues could be construed as misconduct, the claimants were unable to show that their position was prejudiced); M & A Elec. Power Co-op. v. Local Union No. 702, Int'l Bhd. of Elec. Workers, AFL-CIO, 773 F.Supp. 1259, 1261-63 (E.D. Mo. 1991), aff'd 977 F.2d 1235 (8th Cir. 1992) (claimants did not show prejudice because "the Court believes that the source of the arbitrator's decision is based upon the testimony and other evidence presented at the hearing" and not a post-hearing consultation with an outside expert).

"The burden of establishing grounds for vacating an arbitration award is on the party seeking it." United States Life Ins. Co., 591 F.3d at 1173. "[A]n arbitrator's conduct must be such that a party can say that he was deprived of a fair hearing by the challenged conduct, and the party seeking a vacation of an award on the basis of ex parte conduct must demonstrate that the conduct influenced the outcome of the arbitration." M & A Elec. Power Co-op., 977 F.2d at 1237-38 (internal citation omitted).

Similarly, with regard to the non-disclosure of Ross's alleged conflict with Kotner, we must consider whether it rises to the level of prejudicial misconduct. That is, under HRS § 658A-12(a) (Supp. 2013) an arbitrator must make a reasonable inquiry and is required to disclose to all parties:

> [A]ny known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding, including:
>> (1) A financial or personal interest in the outcome of the arbitration proceeding; and
>> (2) An existing or past relationship with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representatives, a witness, or another arbitrator.

7

(Emphasis added.)  The term "knowledge" is defined in HRS § 658A-1 (Supp. 2013) to mean "actual knowledge."  The disclosure requirement is a continuing one and applies to conflicts that arise or become evident during the course of the proceedings. HRS § 658A-12(b) (Supp. 2013).  If the arbitrator does not disclose a fact required by subsection (a) or (b), HRS § 658-12(d) provides that the court may vacate the award under HRS § 658A-23(a)(2) (Supp. 2013).

Ross acted as opposing counsel to Kotner of the Jung & Vassar firm in a civil litigation matter entitled Bowers v. Schooley during which time Ross also consulted with the Arbitrator on the present case.  The Arbitrator testified that it was her typical practice to perform a conflict search, and that when she did, "[t]here were no material conflicts" with any of the six parties to the case.  She did not, however, conduct a conflicts check with respect to the parties' counsel, and was therefore unaware of Ross's ongoing case against Kotner.  At the time of the Arbitrator's first consultation with Ross (January 31, 2006), the law firm of Jung & Vassar, P.C. was not serving as counsel for the Hart Appellants.  Jung & Vassar represented the Hart Appellants between approximately August 2005 and November 2005, and did not resume representation until February 2006.  The Arbitrator could not recall specifically asking Ross if he had any potential conflicts.

Counsel to both parties testified that they were not aware of this conflict until after the Arbitration Award was finalized.  Kotner maintained that she did not know of Ross's participation until after she received invoices from the Arbitrator billing for Ross's time on the case.

The Arbitrator should have discovered and disclosed Ross's conflict with Kotner, a party's counsel.  This does not, however, automatically require abrogation of the arbitration decision under HRS § 658-12(d).  Rather, as noted, a court may vacate an award pursuant to HRS § 658A-23(a)(2).  We must therefore ultimately consider whether the Arbitrator's failure to

8

disclose rises to the level of prejudicial misconduct under HRS § 658A-23(a)(2)(C).

In this case, therefore, the Arbitrator failed to obtain clear consent from the parties to confer with Ross and should have disclosed his conflict with Kotner, and we do not condone this conduct. Indeed, in her own testimony, the Arbitrator clearly acknowledged the ongoing obligations to disclose under HRS Chapter 658A. However, the evidence and findings by the circuit court after the evidentiary hearing support its conclusion that the Hart Appellants did not suffer prejudice as a result. Billing records reflect that the Arbitrator conferred with Ross for a total of 1.1 hours on three separate occasions. Although the Arbitrator could not recall her first two conversations with Ross about the case, she was certain that she "would not have been asking him for his analysis." As to her third conversation with Ross, the Arbitrator testified:

> I had spent a lot of time working on the arbitration award. And I do remember that contact with Ken Ross. I consider myself a good writer, I consider Ken an excellent writer. And I showed him my arbitration award, he suggested some minor changes in organization of the award. Not any of the analysis or the remedies that I had already decided. He had nothing to offer in that respect because he hadn't heard any of the evidence, seen any of the witnesses, heard any of the arguments.

Ross could not remember any conversations with the Arbitrator about the case, and maintained that he did not act as a consultant.

In addition, the circuit court made several findings on the extent of Ross's involvement in the arbitration. Because the Hart Appellants failed to challenge the following findings, we are bound by them. See Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997) ("If a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid.") (citation and internal quotation marks omitted).

> [FOF] 10. Mr. Ross has no recollection of what discussions he had with [the Arbitrator] regarding the case.

9

[FOF] 11. [The Arbitrator] merely recalls the last conversation she had with Mr. Ross about the case. This particular conversation merely dealt with the organization of the written arbitration award.

[FOF] 12. [The Arbitrator] reached her decision in this case based upon her own analysis, and Mr. Ross' discussions with [the Arbitrator] about the case did not have any influence upon her analysis and decision.

[FOF] 13. [The Hart Appellants] failed to meet their burden of proving that [the Arbitrator's] discussions with Mr. Ross prejudiced [the Hart Appellants].

Most significantly, after hearing the testimony of the witnesses, the circuit court explicitly found that the Hart Appellants had not established that the Arbitrator's discussions with Ross had prejudiced them.

We rely heavily in this case on the findings by the circuit court after the evidentiary hearing. In considering whether there has been prejudicial misconduct by an arbitrator, "[c]onclusory statements about prejudice are not sufficient." Lefkovitz v. Wagner, 291 F.Supp.2d 764, 770 (N.D. Ill. 2003), aff'd 395 F.3d 773 (7th Cir. 2005).

Based on the evidentiary hearing and the circuit court's findings, the circuit court did not err in confirming the Final Arbitration Award.

Therefore, IT IS HEREBY ORDERED that the March 2, 2012 Final Judgment is affirmed.

DATED: Honolulu, Hawai'i, October 24, 2014.

On the briefs:

Francis L. Jung
Carol M. Jung
(Jung & Vassar, P.C.)
for Defendants-Appellants

Stephen D. Whittaker
for Plaintiffs-Appellees

Presiding Judge

Associate Judge

Associate Judge

10